# UNITED STATES DISTRICT COURT
### for the
Middle District of Tennessee

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 25-mj-2310 |
| | ) |
| | ) |
| LEONEL VARGAS a.k.a. GangBang a.k.a. JR. | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of     April 24, 2025     in the county of     DAVIDSON     in the
Middle     District of     Tennessee     , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) | Possession of a Firearm By a Previously Convicted Felon |
| 21 U.S.C. Section 841(a)(1) | Possession with Intent to Distribute Controlled Substances |
| 18 U.S.C. Section 924(c)(1)(A) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |

This criminal complaint is based on these facts:

See Attached Statement

☑ Continued on the attached sheet.

/s/ Kyle Rhoades
*Complainant's signature*

Kyle Rhoades, ATF SA
*Printed name and title*

Sworn to me remotely by telephone, in compliance with
Fed. R. Crim. P. 4.1.

Date:   August 22, 2025

*Judge's signature*

City and state:     Nashville, Tennessee     United States Magistrate Judge Jeffery S. Frensley
*Printed name and title*

## STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kyle Rhoades, being first duly sworn on oath, state as follows:

1.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been so employed since July 2022. As an ATF Agent, I attended training at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have been trained in conducting investigations into violations of the Federal firearms laws and the Controlled Substances Act. Prior to my employment with ATF, I served as a United States Border Patrol Agent in Lordsburg, New Mexico, for two years.

2.     The information in this statement is based on my training and experience as well as information provided to me by other law enforcement officials. I have not included all of the facts of the investigation that I know. I have only included the facts that are necessary to establish probable cause for the arrest of Leonel VARGAS, Jr. a/k/a "GangBang," a/k/a "JR" (hereinafter VARGAS).

3.     This statement is submitted in support of a Criminal Complaint for the arrest of VARGAS for Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and Possession of a Firearm by a Previously Convicted Felon, in violation of Title 18, United States Code, Sections 922 (g)(1) and 924.

## PROBABLE CAUSE

4.     During the weeks leading up to April 23, 2025, law enforcement observed VARGAS come out of a residence on Brenda Court in Antioch, Tennessee (hereinafter "the

1

Residence"), meet briefly with multiple individuals, and then return in the Residence. Based on the length of the meetings, the manner in which the meetings took place, and my training and experience, these meetings between VARGAS and other individuals were consistent with narcotics trafficking taking place at the Residence. Based, in part, on these observations, law enforcement obtained a state search warrant for the Residence.

5. On or about April 23, 2025, Metropolitan Nashville Police Department (MNPD) Detectives, with the assistance of ATF Special Agents, executed the search warrant at the Residence and arrested VARGAS on active state arrest warrants. As a result of the search, law enforcement seized from the Residence eleven cellular telephones: seven phones from a bedroom later identified by VARGAS' mother and sister as belonging to VARGAS; one phone from the living room; two phones from the kitchen trash can; and one phone from VARGAS' person. In addition, law enforcement seized two cellular telephone sim cards and a digital scale from VARGAS' bedroom. During the search, law enforcement also located a marijuana grinder with a baggie of loose marijuana in VARGAS' brother's bedroom and approximately two grams of marijuana in VARGAS' sister's bedroom.

6. VARGAS was taken into custody and transported to MNPD headquarters where law enforcement interviewed him. The interview was audio and video recorded. VARGAS waived his *Miranda* rights and agreed to speak with law enforcement without the presence of an attorney. In summary, VARGAS denied any gang affiliation or trafficking narcotics, but he acknowledged knowing that he was a convicted felon.

7. On or about April 24, 2025, law enforcement reviewed recorded jail calls that VARGAS made from Davidson County Detention Center on April 23, 2025, to his mother on her

phone. His mother previously provided this number to the MNPD as her telephone number, and she later admitted to law enforcement that she was the person talking to VARGAS during the communications on April 23, 2025, as described in Paragraph 8, below. The recorded jail calls are in Spanish.

8.    A Spanish speaking agent listened to the jail calls and translated the following statements from Spanish to English.

VARGAS:        Did they grab any pistols or anything like that.

Mother:        No.

VARGAS:        Did they get anything?

Mother:        They grabbed everything. They grabbed all the phones that you had, like 20 of them.

VARGAS:        What else did they get?

Mother:        They grabbed a little bit of mota (*Spanish slang for marijuana*), and they said they got other drugs.

VARGAS:        Where?

Mother:        I don't know where.

VARGAS:        There where the laundry is, I have my laundry basket and my clothes in there. I left my clothes there in the laundry basket. I left it in my soap, the white one. There I left it, you know, I left my clothes and the soap in that grey basket.

Mother:        I will see because they searched everything. Where is your soap?

VARGAS:        In the grey basket.

Mother:        Oh yea.

VARGAS:        That's it?

Mother:        Yeah.

3

| | |
|---|---|
| VARGAS: | Leave it there. In the room, where I put my feet on the bed, at the end of the bed, you look up, you're going to see a hole, and there I have it too, but leave it there. |
| Mother: | Here in the wood? |
| VARGAS: | Yes, all the way in the top, but leave it there, I'm just letting you know, I will send someone to pick it up. |
| Mother: | I'm here looking for it, but I can't find it, the mota (marijuana) is here. |
| VARGAS: | Why are you talking like that? Don't show anyone. I'm going to send someone to get it. |

9. On or about April 24, 2025, MNPD detectives with the assistance of ATF agents executed a second state search warrant at the Residence. Law enforcement located and seized a loaded Glock, Model 30S, .45 caliber pistol loaded with nine rounds of .45 caliber ammunition, one empty extended magazine, and $7,000 in counterfeit currency in the ceiling above the bed in VARGAS' bedroom. This location was consistent with the location described by VARGAS in the above referenced call. Law enforcement also seized five baggies of marijuana with an approximate gross weight of 124 grams, five baggies of cocaine (which field-tested presumptively positive) weighing approximately 4.7 grams, and two packages of Fruity Pebbles Weedables (wrapped edibles of commercialized marijuana that are infused with THC and CBD) inside the white laundry detergent container inside of the laundry basket near the laundry room. I know, based on my training and experience, that the quantity of marijuana and cocaine, and the way it was packaged, is consistent with drug distribution.

10. At the conclusion of the search, law enforcement asked VARGAS' mother, in Spanish, to explain where each individual in the house resides. She told law enforcement that

4

VARGAS resides in the room in the basement with a mattress on the floor where the firearm was found. Law enforcement asked her if anybody in the residence has a firearm. She replied, "No."

11. At the conclusion of the search, law enforcement asked VARGAS' sister who used the room in the basement with a mattress on the floor where the firearm was found. She told law enforcement that it was "JR's" room. Law enforcement asked her if anybody in the residence has a firearm. She replied, "No."

12. An ATF Firearms Nexus Expert examined the Glock Model 30S, .45 Caliber, pistol that law enforcement seized during the second search, and determined this pistol is a firearm, as defined by Title 18, United States Code, Section 921(a)(3). The Firearms Nexus Expert also determined that the firearm was not manufactured in the State of Tennessee. Thus, the firearm traveled in and affected interstate commerce.

13. At the time VARGAS possessed the firearm, he knew he was a prohibited person based on his status as a convicted felon. A background check on VARGAS revealed that on January 18, 2023, in the Criminal Court of Davidson County, Tennessee, in Case Number 2022-C-1312, VARGAS was convicted of Evading Arrest by Motor Vehicle with Risk of Injury and Reckless Endangerment. He received a two-year custodial sentence for this felony conviction, which was suspended to supervised probation. VARGAS pled guilty to this offense and punishment. Therefore, there is probable cause to believe that VARGAS knew he had previously been convicted of a crime involving a punishment greater than one year prior to April 23, 2025.

14. All events occurred within the Middle District of Tennessee.

**CONCLUSION**

15.     Based upon the foregoing facts, there is probable cause to believe that VARGAS Possessed with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); Possessed a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and Possessed a Firearm by a Previously Convicted Felon, in violation of Title 18, United States Code, Sections 922 (g)(1) and 924.

6